**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **A-05-CA-189-AWA** |
| | § | |
| **INFOGLIDE CORPORATION,** | § | |
| **MICHAEL SHULTZ, GERARD VECCHIO,** | § | |
| **MITCH MUMMA, GENE LOWENTHAL,** | § | |
| **RANDALL WOLF, and GAIL TAYLOR** | § | |
| **RUSSELL** | § | |
| **Defendants.** | | |

**MEMORANDUM ORDER AND OPINION**

Before the Court are: Plaintiff's Motion for Summary Judgment Regarding Insured v.

Insured Exclusion (Clerk's Doc. No. 21); Plaintiff's Motion for Summary Judgment on Defendants'

Claims for Extra-Contractual Relief (Clerk's Doc. No. 27); Defendant Infoglide et al.'s Motion for

Summary Judgment Regarding Coverage of Defense and Settlement Costs (Clerk's Doc. No. 30);

Plaintiff's Motion for Summary Judgment on Defendants' Claims for Extra-Contractual Relief

(Clerk's Doc. No. 33), and the responses and replies to these motions.  Also before the Court are

Defendants' Brief on Direct and Derivative Claims (Clerk's Doc. No. 46) filed May 10, 2006, and

Plaintiff's Brief on Derivative Versus Direct Claims (Clerk's Doc. No. 47) filed May 22, 2006.

**I.  BACKGROUND**

This is an insurance coverage dispute, arising out of a lawsuit filed in state court.  In that suit,

former officers, directors and individuals with ownership interests in Infoglide Software Company

("Infoglide") filed suit against Infoglide and its current directors and officers on December 22, 2004,

in the 261st District Court of Travis County, Texas, in a case styled *Tim Bracken et al., v. Infoglide

Software Company, et al.*, Cause No. GN304805 ("the Underlying Suit").  Infoglide and its current

officers and directors have sought coverage for both defense costs as well as settlement costs for this lawsuit under Policy No. 8181-4980 ("the Policy") issued to Infoglide for the policy period of September 21, 2000, to September 21, 2001.  On March 5, 2005, Plaintiff Federal Insurance Company ("Federal") filed a Declaratory Judgment action in federal court seeking a declaration that insurance coverage for the underlying lawsuit is excluded from the policy.

On June 29, 2005, Defendants filed an Answer and Counter-Claim alleging breach of an insurance contract, breach of duty of good faith and fair dealing, breach of duty of ordinary care, declaratory judgment that the Policy is binding and enforceable, violations of Article 21.21 of the Texas Insurance Code, and violations of Articles 21.55 and 542.060 of the Texas Insurance Code. Defendants also filed a DTPA claim. On August 19, 2005, Federal moved to dismiss Defendants' counterclaim (Clerk's Doc. No. 4).   At issue was whether the exclusion for "Insured v. Insured" lawsuits found in paragraph 13(a) of the Policy applies to the Underlying Suit.  Infoglide filed a Memorandum in Opposition (Clerk's Doc. No. 9) on September 9, 2005.  Infoglide also filed an Amended Counterclaim (Clerk's Doc. No. 10), dropping the breach of duty of ordinary care as a separate claim.  This Court held a hearing on the pending motions on October 21, 2005.  At the motions hearing, the Plaintiffs expressed an interest in filing a separate motion regarding coverage and requested that all future and current pending motions be heard together.

After some time passed, Plaintiff Federal Insurance Company filed a motion for summary judgment (Clerk's Doc. No. 21) regarding the Insured v. Insured exclusion in the Policy and withdrew their previously filed motion to dismiss (Clerk's Doc. No. 24).  On January 31, 2006, Federal filed a second motion for summary judgment regarding Defendants' claims for extra-contractual relief (Clerk's Doc. No. 27).   On February 8, 2006, the parties consented to the jurisdiction of the undersigned Magistrate Judge (Clerk's Doc. No. 29).  Subsequent to the consent,

both sides filed cross motions for summary judgment regarding coverage of defense and settlement costs.

This Court again held a hearing on April 19, 2006.  At the hearing, the parties were ordered to brief the issue of whether certain claims in the Third Amended Petition in the Underlying Suit were  direct or derivative.  On May 10, 2006, Defendants filed their brief on this issue.  On May 22, 2006,  Plaintiff filed its responsive brief.  All claims and issues now being ripe and fully briefed, the Court enters the following Order.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Under Rule 56, a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "An issue is material if its resolution could affect the outcome of the action."  *Commerce and Industry Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue exists, the court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Id*.

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."  *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The nonmovant may not rely on mere allegations in the pleadings.  *Id*.  Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment.  *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995).  Rather, the

nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court addresses the various motions separately and in the order they were filed.

**B.    Plaintiff's Motion for Summary Judgment Regarding Insured v. Insured Exclusion (Doc. No. 21) and Defendant Infoglide et al.'s Motion for Summary Judgment Regarding Coverage of Defense and Settlement Costs (Doc. No. 30)**

The Court first addresses Plaintiff's Motion for Summary Judgment Regarding the Insured v. Insured Exclusion and responsive briefing. The Court also addresses the Defendant's Motion for Summary Judgment regarding Defense and Settlement Costs as many of the issues contained in these two motions overlap.

**1.    The "Eight Corners" Rule**

Plaintiff's first argument is that employing the "eight corners" rule, the Petition and the Policy language do not trigger defense coverage. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 197 (Tex. 2000) (finding that an insured's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy.)

An insurer's duty to defend the insured is determined by applying the "eight corners" rule, under which Texas courts look only to the pleadings and the insurance policy to determine whether the duty to defend exists. *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 829 (Tex. App. – Dallas 1992, writ denied). The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit, and courts do not consider the truth or falsity of the allegations in

4

the underlying pleadings. *Culllen/Frost Bank v. Commonwealth Lloyd's*, 852 S.W.2d 252, 255 (Tex. App. – Dallas 1993, writ denied). The duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *Id.* In determining the applicability of provisions of the policy, courts focus on the facts alleged in the petition that show the origin of the damages, not the legal theories asserted for recovery, and indulge a liberal interpretation of the meaning of those allegations. *See id.* at 141-42. Any doubt as to whether the complaint states a covered cause of action is resolved in the insured's favor. *Cullen/Frost Bank*, 852 S.W.2d at 255. However, courts do not look outside the pleadings or imagine factual scenarios which might trigger coverage. *Nat. Union Fire v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). A duty to defend any of the claims against an insured requires the insurer to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App. – Austin 2000, no pet.). Plaintiff contends that, applying the eight corners rule, all claims in its declaratory judgment action and in Defendants' counterclaim should be resolved upon summary judgment.

**2.     Suit Brought By Insureds.**

The basis of Plaintiff's "eight corners" argument is that the Underlying Suit was brought by one or more "Insured Persons," and coverage is therefore excluded by the "Insured v. Insured" exclusion. The relevant Policy language is as follows:

13.     The Company shall not be liable under Insuring Clauses 3, 4, 5, and 6 for **Loss** on account of any **D&O Claim**:

(a)     brought or maintained by or on behalf of any **Insured** except:

(i)     a **Claim** that is a derivative action brought or maintained on behalf of an **Insured Organization** by one or more persons who are not **Insured Persons** and who bring and maintain such **Claim** without the

> solicitation, assistance or participation of any **Insured**.

*See* Policy of Insurance, Exh. Q in Appendix to Plaintiff's Motion for Summary Judgment (Clerk's

Doc. No. 22), at p. 7 § 13(a) (hereinafter "Policy") .  The Policy contains the following definitions:

> **Insured**, either in the singular or the plural, means any **Insured Organization** or any **Insured Person**.

* * *

> **Insured Person** means:

* * *

> (c)     For purposes of coverage under Insuring Clauses 3 and 4, **D&O Liability Coverage and Outside Directorship Liability Coverage**, all past, present and future duly elected directors or duly elected or appointed officers of the **Insured Organization** in the United States of America, or any equivalent executive position under applicable law in any country other than the United States of America.

*Id.* at pp. 15-16.  "Insured Organization" plainly includes Infoglide.  *Id.*  From these provisions,

Plaintiff asserts that because the Underlying Suit was brought by Jay Valentine, the former Chief

Executive Officer of Infoglide, and because former officer David Wheeler joined in the case after

filing, the suit was brought or maintained by one or more "Insureds," and § 13(a) excludes coverage.

Plaintiff relies upon *Sphinx Int'l, Inc. v. Nat'l Union Fore Ins. Co. of Pittsburgh, Pa.*, 412

F.3d 1224 (11th Cir. 2005), to buttress its argument that the Insured v. Insured exclusion bars

coverage for the suit.  In *Sphinx*, Taylor, a former director and officer of Sphinx who held ten percent

of the shares in the company, filed a securities fraud class action against the company.  When first

filed, the suit named only Taylor as a plaintiff.  However, after filing the suit, Taylor published a

notice in a national newspaper soliciting other shareholders to join in his class action lawsuit, and

he later amended to add other plaintiffs (who were not current or former officers or directors of the

company).  When Sphinx sought coverage for the suit under its D&O policy, its insurer denied the claim based upon the "Insured v. Insured" exclusion in that policy.  The language of the the "Insured v. Insured" exclusion in that case barred claims brought:

> By or at the behest of . . . any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY.

*Id.* at 1226.  The policy defined "director" and "officer" to mean "all persons who were, now are, shall be duly elected Directors or duly elected or appointed Officers of the COMPANY."  *Id.*

Applying Florida law, the Eleventh Circuit found that the plain language of the policy excluded the suit from the policy's reach.  In reaching this conclusion, the Eleventh Circuit found that the rationale behind inclusion of an "Insured v. Insured" exclusion – protection from collusive suits – was not relevant, as Florida law provided insurance contracts must be construed using the plain language of the Policy unless they are ambiguous.  Refusing to look behind the text of the exclusion to its rationale, and applying Florida's plain meaning rule, the Court found that the "Insured v. Insured" exclusion unambiguously excluded coverage.  Plaintiff asserts that Texas law regarding the construction of insurance contracts is identical to Florida's, and thus this Court is also precluded from looking outside the unambiguous language of the Policy.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-21 (Tex. 1995).[1]

---

[1]There do not appear to be any Texas cases on the very issue presented here.  The closest cases involve insured v. insured exclusions where all plaintiffs were clearly "insureds" under the policy.  Moreover, these cases do not include the same policy language or provisions that are determinative here.  *See Fidelity & Deposit Co. of Maryland v. Conner*, 973 F.2d 1236, 1245 (5th Cir. 1992) (finding that there is only one interpretation of the Insured v. Insured exclusion and that the plain language of the exclusion bars coverage of a former director's third party complaint against his or her former colleagues); *Voluntary Hospitals of America. Inc. v. National Union Fire Ins. Co. of Pittsburgh. Pa.*, 859 F.Supp. 260 (N.D. Tex. 1993) (holding that "Insured v. Insured" exclusion

Defendants contend that Plaintiff reads this exclusion too expansively, and argues that the exclusion does not act to bar a claim by a non-insured simply because it is joined with a claim by an insured.  They point out that while Valentine and Wheeler may be "Insureds" under the Policy, the suit also named as plaintiffs several parties that were neither officers nor directors of Infoglide, and thus were not "Insureds" under the Policy.[2]  They contend that the presence of one "insured" among the claimants does not bar coverage for the remaining claimants.  Defendants argue that *Sphinx* is distinguishable, because it did not involve a policy that included an allocation clause, as the instant Policy does.  That clause expressly contemplates a situation in which covered claims are joined with non-covered claims, and reads as follows:

> 17.   If **Insureds** in an **Employment Claim** or **Fiduciary Claim** or if **Insured Persons** in a **D&O Claim** incur both loss that is covered by this policy and also loss which is not covered by this policy either because such **Claim** includes both covered and uncovered matters, or because such **Claim** is made against both covered and uncovered parties, then coverage will apply as follows:
>
> (a)   Defense costs:
>
> 100% of all defense costs incurred by such **Insured** on account of such **Claim** will be considered a covered **Loss**; and
>
> (b)   Loss other than defense costs:
>
> All remaining loss incurred by such **Insured** on account of such **Claim** will be allocated between covered loss and

barred coverage for shareholder's derivative suit in which shareholders were assisted by former director of company subsidiary), *aff'd*, 24 F.3d 239 (5th Cir. 1994) (Table).

[2]As is discussed below, Plaintiff made an additional argument in its later briefing that these other plaintiffs, while not officers or directors of Infoglide, were nonetheless "members" of Infoglide, and under Endorsement 7 were therefore also "Insureds."  The Court addresses that argument separately below.

uncovered loss based upon the relative legal exposures of the
parties to such matters.

Policy at 9-10, § 17.  Defendants assert that Plaintiff's reading of the "Insured v. Insured" exclusion

would render this clause meaningless.

To buttress their argument, Defendants rely upon Judge Posner's decision in *Level 3
Communications, Inc v. Federal Insurance Company*, 168 F.3d 956 (7th Cir. 1999), a case applying

an insured v. insured clause like that in this case, and which, unlike the policy in *Sphinx*, contained

an allocation clause.  Indeed, the allocation clause in *Level 3* is identical to that involved here, and

the same insurance company as is involved here was the insurer in that case.  Defendants also note

that the suit in *Sphinx* was initially filed solely by a former officer or director who was clearly an

"Insured," whereas here, with the exceptions of Valentine and Wheeler, none of the plaintiffs in the

Underlying Suit are "Insureds."

In *Level 3*, seven parties, none of whom were "insureds," filed suit, and then later added a

former director as a plaintiff to the case.  The insurer (Plaintiff here) argued that the inclusion of the

former director made the suit one that was "brought or maintained by an insured," and was therefore

excluded from coverage.  Reading identical policy language, Judge Posner rejected this argument,

finding that the inclusion of a single "insured" as a plaintiff in a multi-plaintiff suit did not mean that

the entire suit fell outside coverage.  *Level 3*, 168 F.3d at 960.  Although Judge Posner agreed with

the proposition (also applied in *Sphinx*) that a court should not determine the applicability of the

insured v. insured exclusion based on the purposes behind that exclusion, he found that the definition

of "claim" (which was identical to that in the instant Policy), and the existence of the very same

allocation clause as present here, mandated that the policy be construed to permit coverage of the

claims brought by the non-insured plaintiffs.  *Id.* At 960-961.  Notably, in *Sphinx* the Eleventh

Circuit specifically held that it did not consider *Level 3* wrongly decided, but rather found that its "facts [we]re too dissimilar to our own to be decisive." *Sphinx*, 412 F.3d at 1231. As already noted, the decisive fact in *Level 3* was the existence of an allocation clause that clearly contemplated cases in which covered claims could be combined with non-covered claims, and the absence of that sort of clause was one of the reasons why *Sphinx* came out differently than *Level 3*. Further, the *Sphinx* court also based its contrary result on the difference in the language of the two policies in the two cases.

Given the similarities between this case and *Level 3*, including the fact that the identical policy language is at issue, the Court concludes that the proper construction of the exclusion contained in § 13(a) of the Policy is that the inclusion of an "insured" as a plaintiff, where there are also plaintiffs who are not "insureds," does not bar coverage of the claim.

### 3.      Suit Is a Shareholder Derivative Suit Excluding Coverage

Plaintiff next argues that the Underlying Suit is a shareholder derivative suit brought "on behalf of" Infoglide, and as such, all claims asserted in the underlying action are outside the coverage provided by the Policy. The relevant policy language (already set out above) provides that Federal "shall not be liable under Insuring Clauses 3, 4, 5, and 6 for Loss on account of any . . . Shareholder Derivative Demand brought or maintained by or on behalf of any Insured." Policy at § 13(a). The only exception to this exclusion is stated in subparagraph (i), which provides that coverage will apply to a derivative action "brought or maintained on behalf of an Insured Organization by one or more persons who are *not* Insured Persons and who bring and maintain such Claim *without the solicitation, assistance or participation of any Insured* . . . ." *Id.* at §13(a)(i) (emphasis added). Plaintiff argues that because the underlying action was a shareholder derivative suit brought by one

or more "Insured Persons," and also with the solicitation, assistance, and participation of an "Insured Person," there is no coverage for the suit.

Defendants respond that not all the claims contained in the Petition are derivative actions, and that Texas law imposes a duty on Plaintiff to defend the entire suit if some of the claims are covered. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1367 (5th Cir. 1987). As noted earlier, the Court must construe the claims of the Petition in light of the policy provisions, without reference to the truth or falsity of the allegations. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). All doubts as to whether the facts alleged in the underlying Petition potentially fall within coverage are resolved in the insured's favor. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Thus, with regard to the duty to defend the Underlying Suit, the issue before the Court is whether, viewing the allegations of the underlying Petition, along with the provisions of the Policy, it can fairly be said that any of the claims of the Petition are direct (not derivative) claims.

Defendants rely upon Texas cases to distinguish which claims in the Underlying Suit are derivative rather than direct. However, as Plaintiff correctly points out, the Texas Business Corporation Act requires that "the laws of the jurisdiction of incorporation of a foreign corporation shall govern (1) the internal affairs of a foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares . . . ." TEX. BUS. CORP. ACT § 8.02 (Vernon Supp. 1996) (since re-codified). The parties do not dispute that Infoglide is a Delaware Corporation. Accordingly, Delaware law applies in determining whether the claims are direct or derivative. *King v. Douglas*, 973 F. Supp. 707, 724 (S.D. Tex. 1997).

11

Under Delaware law, the determination of whether a claim is direct or derivative is governed by the analysis set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), where the court held that in deciding if a claim is direct or derivative,

> a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

845 A.2d at 1039.  Specifically, the Delaware Supreme Court established that the resolution of whether a claim is direct or derivative

> must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually).

*Id.* at 1035.  "[U]nder *Tooley*, the duty of the court is to look at the nature of the wrong alleged, not merely at the form of words used in the complaint." *In re Syncor International Corp. Shareholders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004).

There are several cases applying *Tooley* which shed light on whether the claims in this case are properly considered direct or derivative.  *Smith v. Waste Management, Inc.*, 407 F.3d 381 (5th Cir. 2005), presented a case involving claims against Waste Management, Inc.  The plaintiff claimed that misleading public statements made by Waste Management executives induced him (and a class of a similarly situated shareholders) to hold onto their shares of Waste Management stock, resulting in deep losses.  The Fifth Circuit concluded that such claims were derivative, not direct, because the false or misleading statements, having been made publicly, impacted all shareholders equally.  The Fifth Circuit found that under Delaware law, "when a corporation , through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is

12

revealed, the corporation itself has been injured." *Id*. at 385.  The circuit noted that its decision was consistent with that in *Shivarian v. DeFrates*, 161 S.W.3d 102 (Tex. App – Houston [14th Dist] 2005), which also involved a suit by a Waste Management stockholder based on the very same decline in stock price.  In that case, the Court of Appeals found that the claims of large shareholders induced to hold onto Waste Management shares by officers of the company through personal misrepresentations were still derivative claims under Delaware law.  This finding appears to have been based upon the fact that the shareholders' claims were "predicated on a decline in value of their Waste Management stock." *Id.* at 110.  Unfortunately, the case contains very little discussion; rather, the rationale is stated in a few conclusory pronouncements, such as "the misrepresentation the Shirvanians allege caused their injury were based on mismanagement of the corporation's assets.  The Shirvanians cannot prove their injury without proving an injury to the corporation."  *Id.*

Another (more helpful) case relied upon by the Fifth Circuit in *Smith* is *Manzo v. Rite Aid Corporation*, 2002 WL 31926606 (Del. Ch.  Dec.  19, 2002).  Outlining when a shareholder claim might be direct rather in derivative, that court explained, "to state a direct claim [on the basis of a knowing misrepresentation made to shareholders by officers or directors of the corporation] plaintiff must identify some resultant injury that either affects some shareholders disproportionately to their pro rata stock ownership or affects those rights of shareholders that are traditionally regarded as 'incidents' of stock ownership."  *Id.* at *6.  Similarly, in *Oliver, et al. v. Boston University, et al.,* 2006 WL 1064169 (Del Ch. April 14, 2006), the court found that stock dilution claims are direct claims when a significant stockholder's interest is increased "at the sole expense of the minority." *Id.* at *5.  In that case, plaintiffs, investors in Seragen, Inc., argued that the defendants, controlling shareholders, directors and officers of the company, unfairly took advantage of their controlling

position to dilute the minority's interests, engage in self-dealing, and effect a merger that resulted in a disproportionate amount of consideration to be paid to the controlling shareholders.

The Third Amended Petition contains at least eight claims, specifically: violation of TEX. BUS. & COMM. CODE § 27.01 (related to Series G financing); breach of fiduciary duty; fraud and fraudulent concealment; negligent misrepresentation (claiming being misled regarding value of the company, its software; its customers; and its stock); civil conspiracy to devalue and dilute stock; unjust enrichment; breach of contract (related to the Series financings); and oppression of minority shareholders. The Petition states that the claims are being pursued both directly and derivatively, and it alleges both special and general damages. The parties' characterization of their claims as either direct or derivative is not binding on the Court, but rather that determination is based on the factors set forth in the Delaware law detailed above. Further, at this stage of the proceedings, the Court will not determine whether each and every claim in the Third Amended Petition is properly characterized as direct or derivative. Rather, because the Court concludes below that at least one claim in that petition was a direct claim, thereby triggering Plaintiff's duty to defend, it need not go further.[3]

In the Third Amended Petition, plaintiffs make several claims regarding alleged misrepresentations during the Series G financing solicitation. *See* Plaintiff's Appendix (Clerk's Doc. No. 22), Exhibit L at pp. 13-14, 20-21. These claims include the § 27.01 claim in ¶ V, the breach

_____

[3]Although the parties' motions appear by their titles to seek a determination of the issue of settlement costs coverage, the record is not sufficient to make that determination at this time, as that determination will require information regarding the nature of the claims that were settled, the parties' allocation of the settlement as between the claims, and such other information that might be necessary to determine how to allocate the settlement proceeds between the claims and parties for which coverage exists, and the claims and parties for which there is no coverage.

of contract claim in ¶ XII, and the minority shareholder oppression claim in ¶ XIII.  In short, the allegation is that Infoglide issued a Series G financing restructuring in which it proposed a significant dilution of the preferred stock and a 46 to 1 split to common shareholders.  Plaintiffs in the Underlying Suit allege that investment in this round would have protected their position in Infoglide. They contend that the officers and directors withheld from the minority group of shareholders information about a lucrative U.S. Government contract that Infoglide would receive in the near future, despite the shareholders' inquiry into any potential new business.  They allege thus that the majority owners of the company failed to provide the minority members the same information on which to make the investment decision, and that, lacking any expectation of significant future work, the plaintiffs did not invest in the financing round and their shares were thereby diluted.  The suit alleges that this misrepresentation was an attempt to wipe out this group of shareholders and seize control of the company for the larger institutional shareholders who were privy to information about this contract.  Under *Manzo* and *Boston University* the three claims based on these facts appear on their face to be a direct claims under Delaware law, as they all involve controlling shareholders increasing their interests in the company at the expense of a group of minority shareholders. Accordingly, resolving in the insured's favor any doubts as to whether the facts alleged in the underlying petition fall within coverage, the Court concludes that these three claims are not derivative claims, and thus the claims are not excluded from coverage as a "derivative action" under the terms of the Policy.[4]

---

[4]In the January 19, 2004 letter from Clifford Ruder of Chubb Insurance to Michael Shultz, CEO of Infoglide Corporation, Chubb noted that if the suit were considered to be a derivative action there would not be coverage because the claim would not fit within the exception stated in Exclusion 13(a)(i).  Exh. C to Defendant's Motion for Summary Judgment Regarding Coverage of Defense and Settlement Costs (Clerk's Doc. No. 30), at p. 3-4.  In that discussion, however, Mr. Ruder states that

### 4.    Suit is Brought by "Members" of Infoglide Excluding Coverage

Next, Plaintiff argues that under the additional definition of "Insured Person" added by the October 6, 2000, Endorsement 7, all of the plaintiffs in the Underlying Suit were "Insured Persons," and therefore coverage is barred by the Insured v. Insured exclusion. The noted endorsement supplemented the definition of "Insured Person" to include "all past, present, and future *members* of the Insured Organization." *See* Policy, Endorsement 7 at p.14 (emphasis added). The term "member" is not defined in the Policy, and thus Plaintiff argues that the term should be given its "ordinary and accepted meaning." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005). Plaintiff argues that the Court should adopt the American Heritage Dictionary of the English Language definition of "member," which is "one that belongs to a group or organization." Plaintiff argues that the Third Amended Petition states that all the individual plaintiffs, with the exception of Jerry Miller, were Infoglide employees, and that an employee should be considered a "member" of Infoglide under the ordinary meaning of "member." *See* Plaintiff's Appendix at Tab L at p. 6-7. With regard to Jerry Miller, Plaintiff claims that the pleading demonstrates that he and the other individual plaintiffs considered themselves members of the initial control group of Infoglide prior to its move from Tulsa to Austin. *Id.* Plaintiff argues that as "members" of the control group that started Infoglide, they were "Insured Persons" for purposes of the Policy and thus the "Insured v. Insured" exclusion bars coverage.

Defendants respond that Plaintiff originally denied coverage on January 19, 2004, based on the assertion that the Original Petition contained the phrase "Plaintiffs are current shareholders and

---

(at least at that time), Chubb had not "determined that the Petition constitutes a valid derivative action." *Id.* One could conclude from this that even Chubb could not say that the Underlying Petition, on its face, was a clear cut derivative action.

16

former officers of Infoglide," which Plaintiff took to mean that *all* plaintiffs in the Underlying Suit were both shareholders and officers, and thus "Insured Persons."  Once Plaintiff was informed in a requested reconsideration letter that only Jay Valentine had been an officer or director of Infoglide, Plaintiff again denied coverage, this time taking the position that the presence of any officer or director as a plaintiff required application of the exclusion. As discussed above, the Court has rejected that argument.  Defendants complain that Plaintiff, having failed with its other arguments, is attempting to change its position and raise a "third level" of defense with its "members" argument.

Relying upon the "mend the hold" doctrine, Defendants argue that Plaintiff cannot change the original basis for denial of the claim and rely upon new arguments for denial of coverage.  The phrase "mend the hold" first entered the legal lexicon in *Railway Co. v. McCarthy,* 96 U.S. 258 (1877), where the Supreme Court applied the concept to prevent a nonperforming party in a contract suit from asserting a defense that it had not raised prior to the close of evidence. 96 U.S. at 267-68. From that case, two modern forms of the mend the hold doctrine have developed: (1) a minority version of the rule that limits a nonperforming party to defenses first raised after litigation is underway; and (2) a majority version of the rule that limits the nonperformer's potential defenses to those explanations asserted at the time of nonperformance. Robert H. Sitkoff, Comment, *"Mend the Hold" and Erie: Why an Obscure Contracts Doctrine Should Control in Federal Diversity Cases,* 65 U. Chi. L.Rev. 1059, 1059-60 (1998).  Defendants maintain that the Seventh Circuit has adopted this doctrine and applied it in cases where insurance companies change their reasons for refusing to pay a claim. *Harbor Ins. Co. v. Cont'l Bank Corporation*, 922 F.2d 357, 363 (7th Cir. 1990).

Neither the Fifth Circuit nor Texas has adopted this position with regard to insurance cases. For example, under Texas law, insurance coverage cannot be created by estoppel. *Ulico Cas. Co. v.*

*Airline Pilots Ass'n*, 187 S.W.3d 91 (Tex. App. – Fort Worth, 2005, pet. filed). Additionally, under Texas law the only time that waiver or estoppel-like doctrines apply is when an insurer, being aware of defenses to coverage, fails to reserve its rights and the insured is prejudiced by this failure. *See, e.g., Tull v. Chubb Group of Ins. Cos*., 146 S.W.3d 689, 694-95 (Tex. App. – Amarillo 2004, no pet.). In this case, Plaintiff advised Defendants in its denial letter that Exclusion 13(a) precluded coverage based upon the participation of "Insureds" in the Underlying Suit, and the "Insured v. Insured" exclusion applied to the Underlying Suit. In short, the Court finds this "mend the hold" doctrine is not available under Texas law, and no similar waiver or estoppel argument that might be available under Texas law is applicable to these facts.

Turning to the merits of the "members" argument, Defendants offer several responses. First, they suggest that it is incredible that Plaintiff relies on a dictionary definition of the word "member" as authority for its argument, given the detailed definitions contained within the Policy. Further, they note that in the Texas Business Organizations Code Chapter 21, the term "member" is never applied to a for-profit corporation, and appears only twice in the Act, referring to: (1) a "member" of a corporations' Board of Directors, and (2) a "member" of a securities association. Contrasting with the term's absence from the for-profit corporate statutes, Defendants point out that "member" appears in the Nonprofit Corporation Act 56 times, and is also found in the Special Purposes Corporation Act 11 times, and in the Limited Liability Company Act 62 times. Finally, Defendants argue that applying Plaintiff's definition of "member" would effectively nullify any claim made by a past, present, or future employee or shareholder of the corporation, which would render the balance of the coverage meaningless. Defendants assert that interpreting "member" as Plaintiff suggests

would exclude all shareholder derivative suits and suits by any past, present or future employee of Infoglide, as these individuals would also qualify as "Insureds" under the Policy.

The Defendants' first and last arguments have merit.  Because Plaintiff drafted the Policy, any ambiguities in the Policy will be construed against it.  *Nat'l Union Fire Ins. Co. V. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).  Thus, it is inappropriate for Plaintiff to advocate for a broad reading of the term "member," so as to exclude coverage, when the term is not defined in the Policy, and is subject to both a broad and a narrow reading.  Additionally, the Policy definition of "Insured Persons" does not include "employee" or "shareholder."  Only through its broad reading of "member" can Plaintiff bring these groups within the scope of "Insured Persons."  However, if Plaintiff wanted to exclude coverage for suits brought by employees or shareholders, it could have explicitly done so, and the failure to include them within the explicit definition of "Insured Persons" suggests that in this particular the Policy should be construed against Plaintiff.  *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  Finally, if Plaintiff's broad definition of "member" were accepted, then all claims made against Infoglide directors and officers by former employees and shareholders would appear to be excluded from coverage under the "Insured v. Insured" exclusion. This, however, would be inconsistent with the "carveback" provision set out in subsection (13)(a)(i), which creates coverage for some shareholder derivative suits.  If all suits by shareholders are suits by an "Insured," then the carveback of section 13(a)(i) would be rendered meaningless.  The Court will not adopt a construction of the Policy that renders some of its provisions meaningless.

Accordingly, the Court concludes that coverage of the instant claims is not excluded as a result of inclusion of the word "member" within the definition of "Insured Persons."[5]

  **5.  Summary of coverage rulings.**

  In summary, because at least one or more of the claims of the Underlying Suit fall outside of the Insured v. Insured exclusion, and are direct, not derivative claims, Plaintiff is obligated under the Policy to bear 100% of the costs of defense of that suit.  *See* Policy, § 17(a).  With regard to the settlement costs, Plaintiff is obligated to bear the costs of settlement only for those claims which were brought by non-insureds, and only to the extent those claims were direct, not derivative, claims. The allocation of the settlement costs as between covered and uncovered claims must take place as provided in § 17(a) of the Policy.  As noted, the Plaintiffs who were not "Insured Persons" under the Policy are Tim Bracken, Michael Huff, David Miller, Jerry Miller, Wheeler Capital, L.L.C., Laurie S. Wheeler 2000 Trust, Wheeler Family 2000 Trust, and David B. Wheeler 1999 Trust.  As noted earlier, at least the claims of ¶¶ V, XII and XIII of the Third Amended Petition were direct claims. The Court makes no findings at this time as to the remaining claims of the Third Amended Petition.

**C.  Plaintiff's Motion for Summary Judgment Regarding Coverage of Certain Settlement and Defense Costs (Doc. No. 33).**

  In this motion, Plaintiff seeks summary judgment on three issues, relating to the duty to pay settlement or defense costs regarding certain parties.

---

[5]While Defendants' second argument is not dispositive of this issue, it does provide insight into the appropriate reading of the endorsement.  When referring to "members of the Insured Organization," Endorsement 7 could properly be read to mean "members" of a non-profit corporation or a limited liability company as that term is used in Texas law.  Infoglide, as a for-profit corporation, has no "members" in this sense, so the addition of "members" to the list of "Insured Persons" does not assist its argument.

1.      **No Coverage for Settlement Costs Paid to Wheeler Plaintiffs[6]**

The settlement in Valentine II involved two separate written agreements. *See* Plaintiff's

Appendix at Tabs O and P.  In the first, dated August 30, 2005, Infoglide agreed to pay a combined

$300,000 to Tim Bracken, Michael Huff, David Miller, Jerry Miller, and Jay Valentine if certain

triggering events occurred.  In the second agreement, dated September 23, 2005, Infoglide agreed

to pay a total of $700,000 to the Wheeler plaintiffs, Wheeler Capital L.L.C. and two individuals who

were not parties to the Underlying action – Lawrence Wheeler and Laurie Wheeler.  In the first

portion of this motion, Plaintiff seeks summary judgment that there is no coverage for the settlement

costs as to the Wheeler plaintiffs under the Owner v. Insured exclusion.

Paragraph 13(d) of the Policy, as amended by Endorsement No. 2, provides:

> [Federal] shall not be liable for Loss on account of any Claim made against any
> Insured brought or maintained by or on behalf of any individual or entity directly or
> beneficially owning 10% or more of the outstanding securities or voting rights of the
> Insured Organization.

*See* Appendix, Tab Q at p. 8.  Plaintiff identifies the "Wheeler Plaintiffs" as David B. Wheeler,

Laurie S. Wheeler 2000 Trust, Wheeler Family 2000 Trust, and the David B. Wheeler 1999 Trust.

These parties are set to receive a combined total of $525,000 from Infoglide.  The capitalization chart

provided by Infoglide shows that the Wheeler Plaintiffs owned 16.7% of the outstanding securities

of Infoglide, when the shareholder derivative demand that was the basis of the Underlying Suit was

made.  The chart does not divide the various interests, but shows them in the aggregate.  Based upon

---

[6]The Court notes that it has already found that Plaintiff is not liable for settlement costs of
Wheeler's claims as he qualifies as an "Insured" under the Policy and is excluded from coverage
under the Allocation Clause.

the "Owner v. Insured" exclusion, Plaintiff argues that because the Wheeler Plaintiffs owned more than 10% of Infoglide, coverage is excluded under the Policy.

Defendants respond that the plain language of the Policy does not allow the interests of separate entities to be considered in the aggregate.  They point to the phrase "any individual or entity" to support this claim.  Additionally, Defendants argue that there is no summary judgment evidence of the percentage of outstanding securities owned by each Wheeler entity and thus a genuine issue of material fact exists involving this issue.

Plaintiff rejoins that the active petition in the Underlying Suit states that David Wheeler is the trustee for the Laurie S. Wheeler 2000 Trust and the Wheeler Family 2000 Trust.  Under Texas law, a trustee holds legal title to trust property, although the trust's beneficiaries own beneficial or equitable title and are considered the real owners.  *Faulkner v. Bost*, 137 S.W.3d 254, 258-59 (Tex. App. – Tyler 2004, no pet.).  Additionally, David Wheeler is the beneficial owner of the David. B. Wheeler 1999 Trust.  Defendants respond that there is no evidence regarding the controlling interests of the Wheeler Trusts and thus summary judgment is inappropriate on this claim.

It its Reply, Plaintiff points out that the language of the "Owner v. Insured" applies to any claims "brought or maintained by or on behalf of" any person or entity owning 10% or more the stock of the company.  They argue that because David Wheeler has a controlling or beneficial interest in the trusts, he is an "owner" for purposes of the Policy and these interests can be aggregated.

The Court finds that the plain Policy language allows the interests of various entities to be aggregated for purposes of determining exclusion of liability for entities or individuals owning 10% or more of the outstanding securities or voting rights of Infoglide.  The Court finds the language

"directly or beneficially" is controlling, clearly considering that both kinds of ownership are possible for a single "individual or . . . entity."   However, this finding does not lead to a clear result.   While under Texas law the beneficiary of a trust holds title to the trust's holdings "beneficially" and the owner of stock clearly holds title to that stock "directly," the trustee holds the title neither "beneficially" nor "directly" because his legal ability to control the stock is subject to the rights of the beneficiaries. *Faulkner*, 137 S.W.3d at 258-59.   The practical result of this conclusion is that if any of the Wheelers own 10% or more of the outstanding securities or voting rights in Infoglide, when taking into account both stock held directly, and stock held by a trust in which that person is the beneficiary, then that portion of the settlement is excluded from coverage under the Owner v. Insured exclusion.   However, because the only evidence before the Court is the aggregate amount of all of the Wheeler's various direct and beneficial interests, a fact issue exists as to whether any one of the Wheeler's interests exceed 10% of the outstanding stock of Infoglide.   Summary judgment is therefore denied on this issue.

### 2.    No Coverage for Settlement Costs Paid to Laurie S. Wheeler and Lawrence Wheeler

Plaintiff next argues that the September 25, 2003, settlement agreement requires Infoglide to pay $50,000 to Lawrence Wheeler and $75,000 to Laurie S. Wheeler.   Plaintiff asserts that these individuals never made a claim against any director or officer of Infoglide, and neither was a party to the Underlying Action.   Plaintiff asserts that the Policy only provides coverage for D&O claims, and since these two individual never brought such a claim or made a written demand on Infoglide, Plaintiff should not be required to fund settlement costs to these parties.   Defendants claim that the

Settlement Agreement makes it clear that the settlement monies are being apportioned to Plaintiffs in the Underlying Lawsuit.

The Plaintiff is not contractually bound to provide coverage for payments to individuals who were not parties to the Underlying Suit, simply because a Settlement Agreement (in which Plaintiff did not participate) defines these individuals as claimants.  Defendants have failed to identify language in the Policy requiring Plaintiff to cover this portion of the settlement, and Plaintiff is therefore entitled to summary judgment on this issue.

### 3.    No Coverage for Defense Costs Incurred by Defendants Who Are Not Insureds

Finally, Plaintiff argues that it is not required to cover any defense costs incurred on behalf of defendants named in the Underlying Action who are not Insureds under the Policy. In the Underlying Action, thirteen parties were named as defendants who are not insureds under the Policy (these entities are not Infoglide, or past, present, or future duly elected directors or duly elected or appointed officers of Infoglide, or past, present, or future members of Infoglide).  Thus, Plaintiff argues that in no instance does coverage exists for defense costs incurred by these entities.

Defendants respond that under Texas law, an insurance company has the duty to defend an entire case as long as the underlying complaint alleges facts constituting at least one cause of action covered by the policy. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 398 (5th Cir. 1995). Defendants argue that if one claim is covered under the Policy all claims against all parties are covered under the Policy.  Moreover, Defendants argue that there is no summary judgment evidence that the presence of non-insured defendants increased defense costs in the suit.

Although Defendants are correct that an insurance company has the duty to defend an entire case if the underlying complaint alleges a covered cause of action, nowhere in Texas law is this duty

to defend extended to co-defendants or others not listed as Insureds on the Policy.  The insurance policy is a contract between the insurer and insured and the right to coverage is based upon contract rights.  Co-defendants who are not parties to the contract are not covered under the Policy.  The Court finds that Defendants' argument sweeps far too broadly, as it would require any insured defendant to pick up the costs of all non-insured defendants in the same case.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment Regarding Coverage of Certain Settlement and Defense Costs (Clerk's Doc. No. 33).  The Motion is DENIED as to the issue of whether settlement costs paid to the "Wheeler Plaintiffs" are covered based upon the "Owner v. Insured" exclusion.  On all other grounds, the Motion is GRANTED.

**D.    Plaintiff's Motion for Summary Judgment on Defendants' Claims for Extra-Contractual Relief (Doc. No. 27); Response (No. 31)**

Plaintiff also moves for summary judgment on Defendants' counterclaims for extra-contractual relief under the theories of: (1) breach of the covenant of good faith and fair dealing; (2) breach of the Texas Insurance Code and breach of the Texas Deceptive Trade Practices Act; and (3) breach of Article 21.55 of the Insurance Code.

**1.    Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff argues that Defendants cannot make out a claim for breach of the covenant of good faith and fair dealing.  In support, Plaintiff relies upon *Medical Care America Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 341 F.3d 415, 425 (5th Cir. 2003), which states:

> Under Texas law, an insurer owes a duty of good faith in handling its insured's own claim of loss.  This duty arises from the special relationship that exists between the insurer and its insured.  An insured, however, has no claim for bad faith premised on the insurer's investigation or defense of a claim brought against it by a third party.

> This is because "an insured is fully protected against his insurer's refusal to defend or mishandling of a third-party claim by his contractual and *Stowers* rights," which give rise to causes of action sounding in contract and negligence.

(citations omitted). Plaintiff asserts that this caselaw is dispositive in the instant case, because it involves a third party claim.  In short, no payments due under the Policy here would go to the insureds, but would go to the claimants in the Underlying Suit and to counsel defending the suit.

Defendants respond that Plaintiff's reliance upon *Medical Care* is misplaced.  Defendants argue that in that case, like here, the insureds brought suit against the insurer for failure to indemnify the insureds for a claim made under the policy – a breach of contract claim – as well as extra-contractual claims for the breach of duty of good faith and fair dealing.  And in that case, like here, the claim was that the insurer failed to reimburse the insured for its own claim of loss.  Defendants rely on the portion of *Medical Care* which states:

> In this case, Medical Care does not allege that National Union acted in bad faith in investigating or defending the shareholders' claims of loss. Indeed, it admits that National Union had no duty to defend the shareholder suit. Medical Care alleges instead that National Union acted in bad faith in handling its own claim of loss (*i.e.,* reimbursement of its indemnification of the $10 million allocated to its directors and officers following the settlement of the shareholder suit). Its allegation concerns the relationship between it and National Union – not between National Union and the shareholders. Thus, we will treat Medical Care's claim as a first-party claim to which the duty of good faith applies.

341 F.3d at 425.

Texas law on the issue of the viability of a claim for breach of the duty of good faith and fair dealing with respect to third party claims appears to be clear.  In *Texas Farmers Insurance Company v. Soriano,* 881 S.W.2d 312, 317 (Tex. 1994), the Court stated that it "has never recognized a cause of action for breach of the duty of good faith and fair dealing where the insurer fails to settle third-party claims against its insured."  Other courts have refused to recognize a duty of good faith and fair

dealing in handling third-party insurance claims. *See Charter Roofing Co. v. Tri-State Ins. Co.*, 841 S.W.2d 903, 905-906 (Tex. App. –  Houston [14th Dist.] 1992, writ denied); *United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 783 (Tex. App.– San Antonio 1991, writ denied); *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 546 (5th Cir. 1992) ("A finding of bad faith cannot be premised solely on the breach of . . . the duty to defend."); *Employers Nat'l Ins. Corp. v. Zurich Am. Ins. Co.,* 792 F.2d 517, 520 (5th Cir.1986).   The Texas Supreme Court held that Texas law recognizes only one tort duty in the third party context, that being the duty stated in *Stowers*. *Maryland Ins. Co. v. Head*, 938 S.W.2d 27 (Tex. 1996).

In their First Amended Counter-Claim, Defendants state that Plaintiff failed to defend their claim and failed to indemnify them for their losses as required by their insurance contract.  They also claim that this failure to defend and the unreasonable denial of coverage constitutes a breach of the Plaintiff's duty of good faith and fair dealing.  These allegations are nearly identical to those in *Medical Care*.  Plaintiff nonetheless contends that its only obligation under the policy is to provide a defense, and thus Infoglide has no right to seek payment for defense costs, as those costs would be paid directly to defense counsel.  *See* Clerk's Doc. No. 27 at 3-4.  Similarly, Plaintiff argues (without citation) that "[t]o the extent there were covered judgments or settlements, they would be paid directly to the claimants." *Id.* at 3.  Defendants disagree, and argue that they are seeking direct reimbursement "for defense and settlement costs associated with the Underlying Lawsuit." Clerk's Doc. No. 31 at 5.  This dispute, and the lack of any summary judgment evidence to resolve it, prevents the Court from granting summary judgment on this ground.  Thus, the Court will address the merits of the good faith and fair dealing claim.

An insurer only breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear. *Arnold v. Nat. County Mut. Fire. Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Defendants assert that liability was reasonably clear in this case because it was clear that some of the claimants in the suit were not "Insureds," and Plaintiff denied coverage nonetheless. Defendants rely on the Seventh Circuit's holding in *Level 3 Communications* to establish that the insurer should have known the claim was covered. While the Court agrees that *Level 3* ultimately provides the basis for decision on the Insured v. Insured exclusion, the Court disagrees that Federal's liability was reasonably clear in this case. *Level 3* is from a different jurisdiction, and thus was not binding authority in this jurisdiction. More importantly, as discussed above, there is conflicting law from other jurisdictions, and there are difficult issues presented here (and not presented by *Level 3*) involving the nature of the claims in the Underlying Suit. Because of the lack of clear cut binding case law, and the vagaries of Delaware law or direct and derivative claims, it cannot be said that liability in this case was reasonably clear when Plaintiff denied coverage. Accordingly, as a matter of law, there was no breach of Plaintiff's duty of good faith and fair dealing.

### 2. Breach of the DTPA and Insurance Code

Defendants also make counterclaims pursuant to the DTPA and Article 21.21 of the Texas Insurance Code, now codified at Section 541.001 of the Texas Insurance Code. Reviewing Defendants' First Amended Counterclaims, Defendants' claims can be divided into the following categories: (1) misrepresentations regarding the Policy; (2) failing to effectuate settlement in good faith when the insurer's liability had become reasonably clear; (3) refusing to pay a claim without

conducting a reasonable investigation of the claim. *See* Defendants' First Amended Counterclaims (Clerk's Doc.  No.  10) at p. 5.

### a.      Misrepresentation Claims

Defendants claim that Plaintiff violated the Insurance Code by making misrepresentations regarding a policy of insurance. *See* TEX. INS. CODE § 541.051 (making it a violation of the Code to misrepresent the terms of a policy, the benefits or advantages promised, or the dividends to be received).  Defendants' DTPA claim is based upon alleged misrepresentations regarding the quality of the services provided.  *See* TEX. BUS & COMM. CODE § 17.46(d).  Plaintiff argues that Defendants are simply making out a breach of contract claim for Plaintiff's failure to honor its obligations under the Policy.  Plaintiff asserts that under Texas law, assertion of a breach of contract claim does not give rise to a claim under the Insurance Code or DTPA.  *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13-14 (Tex. 1996); *Ashford Dev. Inc. v. U.S. Life Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983).  Plaintiff further asserts that the failure to honor an obligation under an insurance contract is not a misrepresentation because otherwise every coverage dispute would give rise to an extra-contractual claim. *Moore v. Whitney-Vaky Ins.  Agency*,  966 S.W.2d 690, 692-93 (Tex. App. – San Antonio 1998, no pet.).[7]

Defendants respond that *neither Crawford* and *Ashford*, cited by Plaintiff as holding that a breach of contract claim does not give rise to a cause of action under the Insurance Code or DTPA, involve claims made under the Insurance Code.  This is true, as both cases state the general rule that

---

[7]Additionally, Defendants argue that they are claiming more than a breach of contract – they are claiming that standing by an erroneous denial of coverage violated the Insurance Code because coverage was reasonably clear.  As noted in the previous section, the Court has found that coverage was not reasonably clear when Plaintiff denied the claim, and this claim therefore fails.

a  party cannot bring a DTPA claim for a breach of contract.  However, in *Duddleston v.  Highland Ins.  Co.*, 110 S.W.3d 85, 92 (Tex.  App. – Houston [1st Dist] 2003, pet. den), the court relied upon *Crawford* to hold that an alleged misrepresentation stemming solely from an insurer's breach of a policy will not also support a claim for violation of the Texas Insurance Code.  *See also L'Atrium on the Creek I, L.P. v. National Union Fire*, 326 F.Supp.2d 787, 792 n.5 (N.D. Tex. 2004).  The Court finds that Defendants have offered no cognizable summary judgment evidence of a misrepresentation made by Plaintiff.  Defendants' assertions are merely breach of contract claims. Thus, this Court holds that Defendants' misrepresentation claims do not give  rise to a cause of action under the Insurance Code or the DTPA.

        **b.**       **Unfair Settlement Practices Claims**

Defendants claim that Plaintiff also violated the Insurance Code by failing in good faith to effect a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear and for failing to investigate their claims.  *See* TEX. INS. CODE § 541.060 (a)(2) (requiring insurers to effectuate prompt, fair, and equitable settlement of insurance claims once liability has become reasonably clear); TEX. INS. CODE § 541.060 (a)(7) (requiring insurers to conduct a reasonable investigation before denying a claim).  Regarding Defendants' claim about its actions during the settlement process, Plaintiff cites to *Rocor Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 253 (Tex. 2002), holding that an insurer's duties under settlement practices provision of the Insurance Code are no broader than its *Stowers* duties and do not arise until liability was reasonably clear.

*Rocor* sets out the elements of a claim for unfair settlement practices.  To prove this cause of action, the plaintiff must establish that: "(1) the policy covers the claim, (2) the insured's liability is

reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it." 77 S.W.3d at 262. Additionally, Plaintiff argues that Defendants do not allege a violation of any *Stowers* duty in this case. Defendants respond that in *Rocor*, the Texas Supreme Court found there was no principled basis for drawing a distinction between third and first party claims when the insured had been injured as a result of the insurer's unfair claim settlement procedures. Defendants re-assert that their original claim was denied on the erroneous basis that all of the claimants were former officers and directors of Infoglide, and that after repeated notification that this was not the case, Plaintiff changed is reasoning for the denial of coverage two years later. Defendants argue that this qualifies as bad faith.

The Court finds that liability and coverage in this case was in no way reasonably clear and thus there is no summary judgment evidence of bad faith. The initial denial of coverage was clearly colorable, as the extensive briefing and length of this opinion make abundantly evident. Moreover, changing the reason for denial of coverage does not rise to the level of bad faith as Plaintiff included a specific reservation of its right to expand its reasons for denying coverage in its denial letter. Additionally, the Court finds that Defendants have not alleged violation of any *Stowers* duties in this case. Therefore Defendants' claims under the Insurance Code and DTPA fail as a matter of law.

### 3.    Violation of Article 21.55 of the Insurance Code[8]

Plaintiff next moves for summary judgment on Defendants' claim that Plaintiff violated article 21.55 for failure to tender a defense or settle the Underlying Action. Plaintiff cites to three Texas Court of Appeals decisions that have ruled that these provisions do not apply in the context of a third party liability claim. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 187 S.W.3d 91 (Tex. App. – Fort Worth,

---

[8]The former Article 21.55 is now codified at §§ 542.051 - 542.061 of the Insurance Code.

2005, n.p.h.); *Serv. Lloyd's Ins. Co. V. J.C. Wink, Inc.*, 182 S.W.3d 19, (Tex. App. – San Antonio, pet. filed); *TIG Ins. Co. v. Dallas Basketball Ltd.*, 129 S.W.3d 232, 239 (Tex. App. – Dallas 2004, pet. denied). Defendants note that there are a host of state and federal cases reaching the contrary conclusion. *See, e.g.*, *Service Lloyd's*, 182 S.W.3d at 33 (Stone, dissenting) (gathering cases). Because of this conflict between the courts of appeals in Texas, the issue of whether art. 21.55 applies in the context of a third party liability claim has been certified by the Fifth Circuit and accepted by the Texas Supreme Court. The issue was argued on February 14, 2006. *See Lamar Homes Inc. v. Mid-Continent Cas. Co.*, 335 F.Supp.2d 754 (W.D. Tex. 2004).

In an earlier portion of this opinion, the Court concluded that the instant claims are best characterized as first party claims, at least in the context of the claim for breach of the duty of good faith and fair dealing. Notwithstanding this, several of the cases cited by Plaintiff with regard to article 21.55 treat a claim for reimbursement of defense and settlement costs as a third party claim for which no relief is available under article 21.55. *See, e.g., Ulico*, 187 S.W.3d at 106 (concluding that a claim seeking to recover defense costs paid by the insured is a third party claim). As already noted, other cases disagree. Because this is an issue still in dispute, and which is pending before the Texas Supreme Court on certification, the Court declines to try to predict the outcome of that case and resolve the article 21.55 claim on this ground. Given that this opinion will not resolve all claims in this case, the Court will leave this issue pending at this time, in the hopes that a definitive answer will be forthcoming from the Texas Supreme Court.

4.      **Even if the Extra-Contractual Claims are Viable, Plaintiff is Still Entitled to Summary Judgment**

Finally, Plaintiff argues that there must be a finding of coverage before the extra-contractual claims may go forward. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Even if the Court finds that coverage exists, as this Court has, Plaintiff argues that an insurer does not breach a statutory or other duty merely by erroneously denying a claim. *Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). A bona fide coverage dispute involving a reasonable basis for denial of the claim does not rise to the level of bad faith. *Nat'l Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994). The Court concurs with this argument. In this case the parties had a bona fide coverage dispute based upon the language of the Policy. Defendants have presented no cognizable summary judgment evidence supporting a fact issue regarding bad faith. At worst in this case, Plaintiff has erroneously denied a claim. Plaintiff's motion should be granted for this additional reason as well.

Plaintiff contends that this principle has been held to apply to claims under article 21.55. *See* Plaintiff's Motion for Summary Judgment on Claims for Extra-Contractual Relief (Clerk's Doc. No. 27) at 6, n. 16 (citing *Higginbotham v. State Farm Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). The *Higginbotham* case Plaintiff cites, however, actually holds to the contrary. It states that "[a] wrongful rejection of a claim may be considered a delay in payment for purposes of the 60-day rule and statutory damages [under article 21.55]. More specifically, if an insurer fails to pay a claim, it runs the risk of incurring this 18 percent statutory fee and reasonable attorneys' fees." *Id.* at 461. Because in this case the Fifth Circuit had already rejected the plaintiff's bad faith claim on the ground that there was a bona fide dispute between the parties, but it nevertheless allowed the

article 21.55 claim to continue, it is clear that a bona fide dispute does not preclude a claim under article 21.55.  Accordingly, whether that claim is viable will depend on the outcome of the case currently on certification to the Texas Supreme Court.

For the reasons set forth in this section, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment on Defendants' Claims for Extra-Contractual Relief (Clerk's Doc. No. 27), and all extra-contractual claims are DISMISSED WITH PREJUDICE, except the claim pursuant to TEX. INS. CODE § 542.051, *et seq.* (formerly article 21.55).

## IV.  SUMMARY

IT IS THEREFORE ORDERED ADJUDGED AND DECREED Plaintiff's Motion for Summary Judgment Regarding Insured v. Insured Exclusion (Clerk's Doc. No. 21) is DENIED and that Defendant Infoglide et al.'s Motion for Summary Judgment Regarding Coverage of Defense and Settlement Costs (Clerk's Doc. No. 30) is GRANTED.  The Court finds that all defense costs incurred by Infoglide or its Officers and Directors are covered under the Policy and further finds that the Allocation Clause is applicable to any settlement costs.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment Regarding Coverage of Certain Settlement and Defense Costs (Clerk's Doc. No. 33) is GRANTED IN PART.  There is no coverage under the Policy for settlement costs paid to Laurie S. Wheeler and Lawrence Wheeler, or for defense costs incurred by non-insured defendants in the Underlying Suit.  The Court finds that a fact issue exists as to whether any of the various Wheeler plaintiffs own more than 10% of Infoglide stock, thereby bringing them within the Owner v. Insured exclusion of the Policy.

FINALLY, IT IS ORDERED that Plaintiff's Motion for Summary Judgment on Defendants' Claims for Extra-Contractual Relief (Clerk's Doc. No. 27) is GRANTED IN PART and Defendants'

claims for: (1) breach of the covenant of good faith and fair dealing; (2) breach of the Texas

Insurance Code and breach of the Texas Deceptive Trade Practices Act are DISMISSED WITH

PREJUDICE.  Plaintiff's claim pursuant to TEX. INS. CODE § 542.051, *et seq.* (formerly article 21.55)

shall remain pending.

SIGNED this 18th day of July, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE